**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 06-1031-PHX-EHC |
| Plaintiff, | **ORDER** |
| vs. | |
| Dean Howard Trulock, | |
| Defendant. | |

On October 15, 2009, Defendant filed a *pro se* "Request for Clarification and Correction of Sentencing Orders Per Judgment in a Criminal Case Imposed June 19th, 2007[,] FRCVP Rule 60 et seq." (Dkt. 34.) The Court ordered a response, and Plaintiff filed a response on November 17, 2009. (Dkts. 35 & 39.) Defendant filed a reply on December 8, 2009. (Dkt. 40.)

The Court will deny Defendant's motion in so far as it requests correction of the June 20, 2007 Judgment in a Criminal Case. The Court will grant Defendant's motion in so far as this Order provides clarification regarding the Judgment and Defendant's participatioin in the Inmate Financial Responsibility Program (IFRP).

**I.     Background**

Defendant pled guilty to violating 18 U.S.C. §924(c)(1)(A)(ii), for use of a firearm during a crime of violence, a class A felony offense, as charged in Count VI of the Indictment. (Dkt. 32 at 1.) On June 19, 2007, a sentencing hearing was conducted, and, on

1 June 20, 2007, the Court entered a Judgment in a Criminal Case. (Id.) Defendant was
2 sentenced to 84 months in the custody of the Bureau of Prisons and 60 months of supervised
3 release upon release from imprisonment. (Id.) The Court ordered Defendant to pay
4 $11,386.00 in restitution and a $100 special assessment. (Id.) The Court further ordered
5 that "[i]f incarcerated, payment of criminal monetary penalties are due during imprisonment
6 at a rate of not less than $25 per quarter and payment shall be made through the Bureau of
7 Prisons' Inmate Financial Responsibility Program." (Id.)

8 The Court further ordered that: "Restitution shall be paid to the following victims in
9 the following amounts: $11,386.00 as follows: First Credit Union, $980; TruWest Credit
10 Unioin, $770; AmTrust Bank, $9,436; Washington Mutual Bank, $200. At a payment of not
11 less than $150 a month to begin 90 days after you're released from custody. And with the
12 balance to be paid 90 days prior to the expiration of supervision." (Dkt. 32 at 1-2 & Dkt.
13 37 at 24.)

**II.    Defendant's Motion to Correct Judgment in a Criminal Case**

15 Defendant contends that there is an ambiguity between what was said at his June 19,
16 2007 sentencing and what is stated in the June 20, 2007 Judgment. Defendant does not
17 allege that the Court's sentence is contrary to the law. Defendant merely disputes the Bureau
18 of Prisons' (BOP) withholding of his UNICOR earnings for payment of his restitution
19 because the Court's Judgment says that payment will "begin 90 days **after** [Defendant is]
20 released from custody." (See Dkt. 34 (emphasis added).)

21 Defendant contends that the Court's order in the June 20, 2007 Judgment that
22 "payment of criminal monetary penalties are due during imprisonment at a rate of not less
23 than $25 per quarter... through the Bureau of Prisons' Inmate Financial Responsibility
24 Program" conflicts with the Court's verbal orders during sentencing that restitution payments
25 "of not less than $150 a month [are] to begin 90 days after [Defendant is] released from
26 custody." (Dkt. 34, ¶ 3 (citing Dkt. 32 at 1-2).) Defendant contends that the Judgment is
27 "being 'interpreted with bias' and used by the Bureau of Prisons (BOP) and its Inmate
28 Financial Responsibility Program (IFRP) to extort, coerce, schedule, and manage restitution

payments, seizing payments, seizing funds from [Defendant] in direct violation of the Court's actual verbal orders at [his] June 19th, 2007 sentencing, resulting in significant financial and emotional stress for [himself] and [his] family while [he is] incarcerated." (Dkt. 34 at 1.)

Defendant requests that the Court correct the Judgment in a Criminal Case (Dkt. 32) by "eliminating" any language regarding repayment during imprisonment through the IFRP. Defendant argues that his participation in the IFRP is voluntary and the Court "cannot delegate any authority to the BOP to enact a condition of confinement upon [him]." (Dkt. 34 at 2.)

Plaintiff contends that the Court lawfully sentenced Defendant and properly established a repayment schedule. (Dkt. 39 at 3 & 6.) Plaintiff also contends that Defendant can choose whether to participate in the IFRP, and he has been advised of the consequences, if he does not participate in the program. (Id. at 6.)

**III. Discussion**

**A. Standard of Review**

Defendant brings his motion under Federal Rule of Civil Procedure 60(b). The Rules of Civil Procedure are not applicable here because this is a criminal action. See Fed.R.Civ.P. 1. Plaintiff construes Defendant's motion under 18 U.S.C. § 3742(a)(1), which states that "a defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence... was imposed in violation of law..." (Dkt. 39 at 3.) This statute is not applicable here because Defendant has not appealed his sentence.

Therefore, the Court will construe Defendant's motion under Federal Rule of Criminal Procedure 36. Rule 36 allows the Court to "correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed.R.Crim.P. 36. Rule 36 does not permit any substantive changes or amendments to the sentence but merely permits correction of any technical or clerical errors. U.S. v. Kaye, 739 F.2d 488, 491 (9th Cir. 1984) An error is clerical if "what is spoken, written or recorded is not what the court intended to speak, write or record." U.S. v. Goodwin, 15 Fed. Appx. 511, 514 (9th Cir. 2001) (quoting In re Jee, 799 F.2d 532, 535 (9th Cir. 1986)). "[I]nadvertent

errors are corrected under Rule 36 'to conform the record to the intention of the court and parties.'" Kaye, 739 F.2d at 491(quoting 8A J. Moore, Moore's Federal Practice § 36.02 at 36-4). "Rule 36 envisions that the district court will make a factual finding on whether the clerk of the court committed error in describing the oral sentence imposed by the court." U.S. v. Dickie, 752 F.2d 1398, 1400 (9th Cir. 1985).

### B. The Inmate Financial Responsibility Program

The Inmate Financial Responsibility Program is a work program instituted by the Bureau of Prisons to encourage each sentenced inmate to meet his or her legitimate financial obligations. Geiger v. Fed. B.O.P., 487 F.Supp.2d 1155, 1158 (C.D. Cal. 2007) (citing Montano-Figueroa v. Crabtree, 162 F.3d 548, 548 (9th Cir. 1998), *cert. denied* 526 U.S. 1091 (1999); 28 C.F.R. §545.10). The program provides for development of a financial plan that allows inmates to pay their obligations, such as court-ordered assessments, restitutions, and fines. Id. "The IFRP applies to nearly all post-trial inmates in federal facilities and it is intended to encourage each sentenced inmate to meet his or her legitimate financial obligations." U.S. v. Lemoine, 546 F.3d 1042, 1047 (9th Cir. 2008).

The Ninth Circuit held in U.S. v. Lemoine that the BOP "may require inmates who participate in the bureau's [IFRP] to pay restitution to victims at a higher or faster rate than was specified by the sentencing court, without obtaining an order from the sentencing court directing or approving the larger payments." 546 F.3d at 1043-44. Under the IFRP, inmates who have court recognized financial obligations must use at a certain percentage of their UNICOR[1] earnings to pay their debts. "For inmates in UNICOR grades 1 through 4, the

---

[1]UNICOR is the trade name of Federal Prison Industries, Inc. (FPI), a statutorily-created government corporation. Coupar v. U.S. Dept. of Labor, 105 F.2d 1263, 1264 (9th Cir. 1997) (citing 18 U.S.C. § 4121). The purpose of UNICOR is "to provide work to inmates confined in federal institutions." Id. (citing 28 C.F.R. § 345.10). "FPI is authorized, but not required, to pay the inmates it employs." Id. (citing 18 U.S.C. § 4121). All inmates must work if ordered to do so, but they may choose whether to work for FPI in particular. Id.

- 4 -

IFRP requires payments of at least 50 percent of the inmates monthly pay." Lemoine, 546 F.3d at 1047.

An inmate may decline to participate in the IFRP, but the failure either to participate or comply with a financial plan created pursuant to the program carries certain consequences, set forth in 28 C.F.R. § 545.11(d). Lemoine, 546 F.3d at 1047. The inmate "faces sanctions if he does not 'volunteer' to participate in this program, or make 'voluntary' payments in an amount to be determined by the BOP, or 'consent' to the BOP's unilateral decision to increase the amount of those required payments." Geiger, 487 F.Supp.2d at 1158. For example, "[a]ny inmate assigned to UNICOR who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months." 28 C.F.R. § 545.11(d)(5). The Ninth Circuit has found that "the consequences of declining to participate in the IFRP are reasonably related to the legitimate penological interest of rehabilitation because the program promotes acceptance of responsibility and fulfillment of the obligation to make restitution to victims." Lemoine, 546 F.3d at 1049 (citations omitted).

Although the district court is ultimately responsible for setting a schedule for making restitution, there are no limits on the BOP's operation of an independent program, such as the IFRP, that encourages inmates voluntarily to make more generous restitution payments than mandated in their respective judgments. Lemoine, 546 F.3d at 1048 (citations omitted). Therefore, a prisoner volunteers to allow the withholdings of his earnings through participation in the IFRP. If a prisoner chooses not to allow the withholdings then there are consequences for that choice, such as removal from UNICOR.

**C.     Conclusion**

The Court set a minimum restitution payment schedule at the June 19, 2007 sentencing. As stated at the sentencing hearing and in the Judgment, Defendant should make restitution payments "to begin 90 days after [he is] released from custody... with the balance to be paid 90 days prior to the expiration of supervision." (Dkt. 32 at 1-2 & Dkt. 37 at 24.) The June 20, 2007 Judgment includes a minimum payment requirement through the IFRP

while Defendant is incarcerated. (Dkt. 32 at 1.) The IFRP allows Defendant to "voluntarily" make restitution payments while incarcerated.

Although participation in the IFRP is technically "voluntary," Defendant may be required to make more generous restitution payments through the IFRP than mandated in the Court's Judgment. See Lemoine, 546 F.3d at 1048 (the IFRP encourages inmates to voluntarily make more generous restitution payments than mandated in their respective judgments). Therefore, the BOP may withhold a part of Defendant's UNICOR earnings to pay Court imposed restitution that was ordered to be paid when the prisoner was released from custody.

Although the Court did not specifically inform Defendant at his sentencing that restitution may be paid through his participation in the IFRP while he is incarcerated, it is unnecessary for the Court to correct the June 20, 2007 Judgment. Defendant would be obligated to make restitution payments while incarcerated through his participation in the IFRP, whether or not the Court included an order in the Judgment that he make restitution payments while incarcerated. There was nothing said at the June 19, 2007 sentencing or included in the Judgment that would preclude Defendant from making payments sooner or greater than the minimum requirements. Therefore, the Court finds that the June 20, 2007 Judgment does not conflict with the Court's June 19, 2007 sentence.

**IV.    Defendant's Request for Documents**

Defendant also requests that the Court "provide [him] with a statement showing what [he] paid towards [his] monetary penalties to date through the BOP's Inmate Financial Responsibility Program." (Dkt. 34 at 2.)

On February 17, 2010, the Court issued a Status Report and Order, with a copy of Defendant's "Inmate Financial Plan." (Dkt. 41.) The Court ordered Plaintiff to file a copy of Defendant's earnings from UNICOR work assignments and the amount of any trust account and the purposes for which it is retained. (Id.) On March 2, 2010, Plaintiff filed a copy of Defendant's UNICOR financial record. (Dkt. 42.) Plaintiff further noted that "UNICOR has no trust fund(s) for the defendant, and the records received by the government

were the complete records[,] regarding the defendant[,] possessed by UNICOR." (Id. at 2.) On March 22, 2010, Plaintiff filed a copy of Defendant's UNICOR account statement from September 8, 2007 through February 28, 2010. (Dkt. 44.)

On March 11, 2010, Defendant filed a "Response to Receipt of Document," acknowledging receipt of Defendant's UNICOR financial record. (Dkt. 43.) On April 16, 2010, Defendant filed a letter regarding receipt of documents and a copy of his "Offender Payment History." (Dkts. 45-46.)

Defendant acknowledged that he has "received all documentation requested [in] the motion." (Dkt. 45.) Therefore, Defendant's request for documents is denied as moot.

Accordingly,

**IT IS ORDERED** that Defendant's "Request for Clarification and Correction of Sentencing Orders Per Judgment in a Criminal Case Imposed June 19th, 2007[,] FRCVP Rule 60 et seq." (Dkt. 34) is **denied**, except in so far as this Order provides clarification regarding Defendant's participation in the Inmate Financial Responsibility Program and the June 20, 2007 Judgment in a Criminal Case.

DATED this 6th day of May, 2010.

*/s/ Earl H. Carroll*
Earl H. Carroll
United States District Judge